UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of Republic of Kazakhstan for an Order Directing Discovery from Linklaters LLP Pursuant to 28 U.S.C. § 1782 | No. 1:18-mc-540-GHW |

## DECLARATION OF NICOLA GILLESPIE

NICOLA GILLESPIE declares as follows pursuant to 28 U.S.C. § 1746:

1. I am the Global Head of Professional Indemnity at Linklaters LLP ("Linklaters"), which is the Respondent in this matter. I submit this declaration in support of Linklaters' Memorandum of Law in Opposition to the Republic of Kazakhstan's Petition for Discovery in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782.

2. The statements made in this Declaration are based upon information personally known to me or based upon my review of records kept in the ordinary course of Linklaters' business. The statements are accurate to the best of my knowledge and belief.

**Linklaters LLP**

3. Linklaters is a limited liability partnership ("LLP") registered in England and Wales.

4. Linklaters' registered head office, from which the firm's activities are directed, is in London.

5. Linklaters' Firmwide Managing Partner and Senior Partner are both based in London.

6. Linklaters has offices in 30 cities spread across 20 countries.

1

7. Linklaters' New York office is a branch of the LLP incorporated in England and Wales. Linklaters' only other U.S. office, located in Washington, D.C., is also a branch of the same LLP.

8. As of May 1, 2018, Linklaters has 6,525 employees worldwide. According to Linklaters' records, at that time, 2,881 employees worked in Linklaters' London office, 322 employees worked in its Hong Kong office, 319 employees worked in its Paris office, 225 employees worked in its Belgian offices, 217 employees worked in its Madrid office, 215 employees worked in its New York office, and 24 employees worked in its Washington, D.C. office.

9. Linklaters' electronic data centers are located in the U.K. and in Hong Kong.

10. U.S.-based Linklaters lawyers' electronic documents and emails are stored on U.K. servers.

**Linklaters' Role in the "Laren Transaction"**

11. I understand that the so-called Laren Transaction involved the issuance of the second of two series of notes to raise financing for two Kazakh gas and oil companies—Kazpolmunay LLP and Tolkynneftegaz LLP—that the Stati Parties controlled.

12. According to the information contained in our client and matter record systems, Linklaters represented two Renaissance Capital entities in this transaction. Renaissance Capital KB OOO/CB Renaissance Capital OOO, a company incorporated in Russia, was the primary client. Renaissance Capital Advisory Services Limited, a company incorporated in Bermuda, was an additional client of record for this transaction. I will refer to these two entities as "Renaissance Capital."

13. Linklaters advised Renaissance Capital primarily out of its head office in London.

14. Linklaters did not represent any of the Stati Parties in the transaction; they had separate counsel, Salans LLP.

15. Linklaters did not serve as custodian in the deal.

16. I understand that serving in that role would have been highly unusual because a bank—not a law firm—generally serves as custodian for this type of deal.

17. I also understand that Wells Fargo, the Trustee in the transaction, sent some of the deal documents through Linklaters' New York office as a convenience, but those documents were then forwarded to London and distributed to investors. Linklaters did not hold those documents as custodian.

18. Linklaters recorded over 4,700 billable hours on this matter.

19. Over 4,100 of the hours recorded on this matter were recorded by London-based fee earners.

20. Only 430 of the hours recorded on this matter were recorded by New York-based fee earners. Of that time, 384 hours pertained to post-closing matters that arose after the Laren Transaction was finalized in June 2009 and do not relate to the transactional details that are the focus of the Republic's document requests.

21. The last time billed to the client regarding this matter was recorded in August 2009.

22. Since June 2009, approximately two-thirds of the professionals who worked on the Laren Transaction have left Linklaters.

23. Because of the time that has passed since the transaction, it has been difficult to locate persons with detailed personal knowledge of the transaction.

24. Linklaters has stored at least 800 documents in a master electronic file for this matter.

25. Linklaters has archived around 60 folders of hard-copy documents for this matter in London.

26. Linklaters has not recalled the documents archived for this matter in its New York office. It has determined, however, that there are 6 records, which could include boxes, files, or folders, of hard-copy documents being held in New York for this matter.

27. Additional hard-copy documents for this matter are held in Luxembourg.

28. Many of the responsive documents are likely to be privileged, although Linklaters cannot determine how many without first completing an onerous review process.

29. The lead Linklaters partner on the transaction has over 13,000 emails relating to the transaction.

30. Over 70 other lawyers and paralegals billed time to the matter.

31. Although it is expected that there would be a large degree of duplication in emails, any exercise of deduplicating the emails would be a burdensome, time-consuming, and costly exercise.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 31, 2018.
London, United Kingdom

Nicola Gillespie